Patricia HARL, Appellant,

v.

ACACIA MUTUAL LIFE INSURANCE COMPANY, Appellee.

No. 17015.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 13, 1962.

Decided April 5, 1963.

Mr. Leon Shampain, Mt. Rainier, Md., for appellant.

Mr. Jo V. Morgan, Jr., Washington, D. C., with whom Messrs. Roger J. Whiteford and John J. Wilson, Washington, D. C., were on the brief, for appellee.

Before WASHINGTON, DANAHER and WRIGHT, Circuit Judges.

DANAHER, Circuit Judge.

The appellant is the widow of Richard D. Harl, a U. S. Navy bandsman who was killed in an aircraft collision in Brazil on February 25, 1960. As beneficiary under appellee's policy insuring the life of her husband, appellant sued to recover $14,140, with interest from February 25, 1960, stipulated to be the amount of recovery if the appellant is found entitled to prevail. Acacia asserted as a defense that the policy had lapsed because of failure to pay premiums in accordance with the terms and provisions of the contract, and then moved for summary judgment. A district judge denied the motion, whereupon the appellee took the appellant's deposition, and again moved for summary judgment. Although the second motion was opposed, a different judge entered summary judgment in favor of the appellee, and this appeal followed.

■■ Before us is a stipulation of certain facts and a record which includes in addition to the pleadings, the appellant's deposition, various answers to interrogatories, affidavits, a copy of the policy and pertinent exhibits. Whether or not Acacia between March 21, 1958, and February 8, 1960 had pursued a course which reasonably could lead Harl to believe that a lapse would not be charged against him, or if a lapse occurred, whether or not Acacia had waived

that lapse, is clearly material. We are unable to say that Acacia has met its burden of showing the absence of any genuine issue in such respects.[1]

Compendiously, the record shows that in February, 1958, appellant and her decedent obtained a mortgage loan of $14,000 from Acacia. The Company issued the policy in suit with a mortgage retirement agreement which involved allotments from the Navy pay of the decedent at the monthly rate of $136, of which $127.78 was to be applied to the mortgage note, taxes and insurance, and the balance of $8.22 was to pay the life insurance premium. The insurance contract provided that any "premium hereon is payable in advance at the Home Office of the Company." Harl made the first payment as of February 25, 1958 to cover the premium from March 21, 1958 to April 21, 1958, after which the monthly allotments were to be used to keep the account current.

The mortgage loan was paid in full by May, 1959, but the Navy allotments were not discontinued until July. With the policy paid up at least until August 21, 1959, Acacia on September 9, 1959, wrote to Harl requesting that payments thereafter at the adjusted rate of $8.59 per month be made to it "regularly and within the liberal time limit provided by your contract."[2] The letter outlined various plans and informed Harl whichever "you select, we will send you regular reminders well in advance of the time a payment is due."[3]

In answering appellant's interrogatories, the Company submitted a record of payments from which we abstract the following:

| Dates | | | How | Date | Date |
| From | To | Amount | Paid | Received | Posted |
| --- | --- | --- | --- | --- | --- |
| 8/21/59 | 9/21/59 | $ 8.59 | Payment | 10/ 5/59 | 10/12/59 |
| 9/21/59 | 10/21/59 | | | | |
| | | $17.18 | " | 11/ 2/59 | 11/ 5/59 |
| 10/21/59 | 11/21/59 | | | | |
| 11/21/59 | 12/21/59 | $ 8.59 | " | 12/14/59 | 12/17/59 |

The contract was in force at least 31 days from December 21, 1959. Some time thereafter Acacia sent to Harl a "reminder and late remittance offer." The notice recited that an $8.59 payment had not been made in the grace period, and added, "However, you may still pay your premium without interest or application for reinstatement provided it is received in our office on or before Feb. 5, 1960." That date fell on a Friday. On Monday, the next business day, receipt stamped "February 8, 1960, 10 A. M.," the Company received in its printed return envelope postmarked February 6, 1960, 12 M.,[4] a check for $17.18, dated February 5, 1960, and signed by Harl. The Company under date of February 12, 1960, acknowledged receipt of that check, which it cashed,[5] and transmitted

1. Evers v. Buxbaum, 102 U.S.App.D.C. 334, 253 F.2d 356 (1958).

2. The policy allowed a "grace period of 31 days * * * during which time * * * the policy will remain in full force." Also, it provided that if lapsed, the policy "may be reinstated at any time upon presentation to the Home Office of evidence of insurability satisfactory to the Company and the payment of overdue premiums with interest at the rate of five per centum per annum from their respective due dates."

3. What steps were taken with respect to the promised "regular reminders" we are unable to say. Moreover, the record is silent as to any "late remittance offer" pertinent to the dates hereinafter listed.

4. Mrs. Harl's deposition disclosed that the envelope containing the check had been mailed about 7 P.M. Friday evening, February 5, 1960.

5. The fact, by itself, that the Company cashed Harl's February 5th check is not conclusive, Gould v. Equitable Life Assur. Soc., 231 N.Y. 208, 131 N.E. 892 (1921),

an application for reinstatement with directions that Harl complete and return the form "just as soon as you can." The Company added a postscript which read:

> "P.S.: If it is not convenient for you to furnish us with the above item in time to reach the Home Office prior to February 21, 1960, please also send us an additional deposit of $8.59 to cover the monthly premium due on that date." [6]

On such facts and on the record then before the district judge, Acacia's first motion for summary judgment was denied, properly we think.[7]

Acacia thereupon took the appellant's deposition on February 1, 1962. It was developed that Harl had left the country on a Navy assignment on the morning of February 6. Additionally it was brought out, that Harl had taken "care of all his business before 7 o'clock the evening before." Details as to the mailings by either the Company or Mrs. Harl added nothing to what had earlier been before the court with reference to the critical events touching the issue upon which continuance of the contract depended except insofar as, arguably, they might tend to support the inferences and conclusions as claimed by the appellant.

Acacia then filed its second motion for summary judgment. It asked for judgment alleging that it now appeared the decedent had not received the Company's letter of February 12, 1960, and hence he could not have changed his position in reliance on that letter. Moreover he did not send in the payment received February 23, 1960; Mrs. Harl did. We see no predicate for summary judgment in such allegations. Insofar as the Company's motion relied upon the "new" fact that the February 5, 1960, check had not been mailed until the evening of that day, it is obvious that it contravenes not at all the stipulated fact before the first judge that "no payment was received by defendant on or before Friday, February 5, 1960." [8]

Thus the question before the second judge remained as it always had been, whether or not in view of the way the parties had dealt throughout, Harl might reasonably conclude no lapse would be charged against him if he substantially complied with requirements or whether or not exact and timely compliance by Harl had been waived.

Without intimating what an ultimate decision should be, we may observe that on at least two previous occasions Harl had failed to make the monthly premium payments on the due date or within the 31-day grace period allowed under the policy. Nonetheless, as the record of payments indicates, *supra,* the policy had been retained in force and late payments had been accepted by Acacia and had been credited to the account of the assured. Whether additional exhibits referable to the critical period might have been available or whether this appellant would have been able to introduce other evidence in support of her claim, we have no way of knowing. She certainly was not bound to try to prove her entire case in furtherance of her opposition to the second motion.

Summary judgment should be used only "where it is quite clear what the truth is." [9] There would seem here

---

but that fact may be considered in connection with all earlier circumstances bearing upon the issues in controversy. Berkshire Life Insurance Company v. White, 95 U.S.App.D.C. 110, 220 F.2d 373 (1954), and see cases cited therein at note 2.

6. February 21, 1960, was a Sunday followed by the legal holiday, Washington's birthday. The Company received Mrs. Harl's check for $8.59 on the morning of February 23. It had been mailed February 22, 1960, at 9 P.M. according to the

postmark. The Company cashed the check.

7. Dewey v. Clark, 86 U.S.App.D.C. 137, 143, 180 F.2d 766, 772 (1950).

8. On brief Acacia concedes that had the payment "been received on or before February 5, 1960," in accordance with its offer, earlier non-compliance would have been waived.

9. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944).

to have been a bona fide dispute on the facts,[10] and in any event, we are unable to say that Acacia was entitled to judgment as a matter of law. Let us put it this way, as did the Eighth Circuit:

> "That one reasonably may surmise that the plaintiff is unlikely to prevail upon a trial, is not a sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them." [11]

Reversed.

---

10. See Associated Press v. United States, 326 U.S. 1, 6, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945); Dewey v. Clark, supra note 6.

11. Sprague v. Vogt, 150 F.2d 795, 801 (8 Cir. 1945).