**G. S. LEONARD et al., Appellants,**

v.

**BHJK CORPORATION.**

No. 71-1440.

United States Court of Appeals, District of Columbia Circuit.

Argued June 15, 1972.

Decided Sept. 18, 1972.

---

* Compare Restatement Torts (Second) §§ 333–339.

Mr. A. Gilmore Flues, Washington, D. C., for appellants.

Mr. A. Fred Freedman, Washington, D. C., with whom Messrs. William R. Lichtenberg and Joseph Luria, Washington, D. C., were on the brief, for appellee.

Before ROBINSON and WILKEY, Circuit Judges and JAMESON,* Senior District Judge.

JAMESON, Senior District Judge:

This is an appeal from a summary judgment in favor of the defendant-appellee, BHJK Corporation. In a complaint seeking attorney fees, plaintiffs-appellants, G. S. Leonard, S. Clammer, and A. G. Flues, d/b/a Leonard, Clammer, Flues & Redmon, lawyers practicing in Washington, D. C., allege that

---

*  Sitting by designation pursuant to the provisions of Title 28, U.S.Code, Section 294(d).

they were retained by BHJK to assist "in arranging for the financing and sale" of real property in Maryland known as Falconhurst, payment "to be contingent" upon their success "in making arrangements for the disposition of the property" acceptable to the four stockholders of defendant. They allege that they brought the defendant Ted Lingo, a licensed real estate broker in Maryland and the District of Columbia, "into contact with the stockholders of BHJK Corporation for direct negotiations between them" [1] and through Lingo a sale was consummated, and that plaintiffs were "the procuring cause of the sale" and their "services under the retainer * * * were of an agreed price or reasonable value of $50,000." [2]

In granting summary judgment [3] the district court held that there was no genuine issue as to any material fact, and that plaintiffs were seeking to recover "a real estate commission under the guise of a claim for attorney fees" and had no "real estate license in the state of Maryland or in the District of Columbia." [4]

Summary judgment of course is proper only where there is no genuine issue as to any material fact. Rule 56 (c) F.R.Civ.P. The movant has the burden of clearly demonstrating the absence of any genuine issues as to all the material facts applicable under his theory of the law,[5] and a party opposing summary judgment is entitled to the benefit of all favorable inferences that may be drawn from the evidence.[6] The court may not weigh or resolve issues.[7] In Harl v. Acacia Mutual Life Insurance Company, 115 U.S.App.D.C. 166, 317 F. 2d 577, 580 (1962), this court quoted with approval the holding of the Eighth Circuit:

"That one reasonably may surmise that the plaintiff is unlikely to prevail upon a trial, is not a sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them." [8]

Two questions are presented on this appeal:

(1) Whether there are any genuine issues of any material facts with respect to (a) the representation of appellee by appellants, (b) the nature of any "retainer" agreement, (c) the nature of any services performed by appellants; and (d) whether appellants were the "procuring cause" of the sale; and

---

1. It was alleged further that Lingo stated to plaintiffs that he was representing a syndicate of which he was a member which would be interested in acquiring Falconhurst and that he would handle "any necessary formalities of the transfer" and arrange for his own compensation, and on the basis of these representations plaintiffs brought Lingo into contact with BHJK.

2. Plaintiffs allege that they "made various efforts to interest individuals and syndicates in the purchase of Falconhurst, and considered with the officials of BHJK Corporation and others questions relating to the refinancing of the existing loans * * * payment of road improvements, prospective sewer lines, and the possibility" of rezoning.

3. The summary judgment was based on the pleadings, depositions, and documents, including depositions of each of the plaintiffs. See F.R.Civ.P. 56(c).

4. Lingo and three of his corporations were also named as parties defendant, and summary judgment in their favor was granted in a separate order. Notice of appeal was filed, but the appeal was not perfected and was dismissed by this court.

5. Underwater Storage Inc. v. United States Rubber Co., 125 U.S.App.D.C. 297, 371 F. 2d 950, 953 (1966), cert. denied 386 U.S. 911, 87 S.Ct. 859, 17 L.Ed.2d 784.

6. Semaan v. Mumford, 118 U.S.App.D.C. 282, 335 F.2d 704, 705 (1964), on remand, D.C., 263 F.Supp. 516.

7. Empire Electronics Co. v. United States, 311 F.2d 175, 179 (2 Cir. 1962) ; 3 Barron and Holtzoff, Federal Practice and Procedure § 1235 (Wright Ed. 1958), 6 Moore's Federal Practice, para. 56.15(3) (1965).

8. Sprague v. Vogt, 150 F.2d 795, 801 (8 Cir. 1945).

(2) If the first question is answered in the affirmative, whether viewing the evidence in the light most favorable to appellant-attorneys they may maintain this action for services performed in connection with the sale of real property located in the State of Maryland, since admittedly they were not licensed real estate brokers.

Appellee contends first that under the undisputed facts appellants were never retained as attorneys, but "were contacted by a stockholder of defendant, as principals interested in either purchasing or syndicating the property." This stockholder, Louis Battistone, so testified, stating that initially he considered Clammer (or his wife) as a potential purchaser and subsequently as a member of a group interested in purchasing the property. He denied discussing any fee or commission arrangement.[9]

On the other hand, each of the appellants testified that appellants' firm was retained by Battistone on a contingency basis to find a purchaser for the property, and then do whatever work was necessary to perfect the sale.[10] They testified that they had discussed a contingency fee arrangement of $80,000 with Battistone, to be decreased if the sale price decreased.[11] Mrs. Elizabeth P. Weisiger, a saleswoman for Lingo, testified that she understood that appellants were acting as counsel for appellee.[12]

In specifying the work to be performed pursuant to the "retainer" arrangement and subsequent discussions with Battistone, appellants testified that they were to find a buyer for the property and prepare the property for sale. The preparation would depend upon the buyer, the price and the terms, but would involve obtaining extension of mortgages,[13] resolving sewage problems,[14] negotiating a settlement of a dispute with a paving contractor,[15] and arranging for rezoning from two acre to one acre and half acre lots.[16]

As to the work actually performed, appellants testified that they arranged for an extension of a mortgage (held by the estate of one of the stockholders of BHJK);[17] put Lingo in contact with appellee, who subsequently sold the property to Kiplinger Editors, Inc., with Lingo acting as agent and broker;[18] held a number of conferences with Battistone and prospective purchasers of the property, with whom they discussed financing possibilities;[19] and took a number of prospective purchasers to view the property.[20] Clammer and Flues testified that they were asked by Battistone to comment on the proposed contract with Kiplinger and that they had received a copy of the contract from Battistone.[21] Battistone denied (or could not recall) this incident.[22] Flues testified further that he was informed by Dr. Clarence Jarboe, president of BHJK, that "they

9. Battistone dep. at 23–25, 29.

10. Clammer dep. at 16–21, 32–33, 51–52; Leonard dep. at 62–66, 71–73, 77; Flues dep. at 91–94, 120.

11. Clammer dep. at 31–32; Leonard dep. at 75–77; Flues dep. at 91.

12. Mrs. Weisiger testified in part:
"Q What did you understand to be the nature of Mr. Flues' interest in the property?
"A That he was the lawyer for a syndicate that wanted to sell it.
"Q And the syndicate was BHJK?
"A Yes." (Dep. 19–20)

13. Clammer dep. at 19, 22, 29–30; Leonard dep. at 65; Flues dep. at 90, 105.

14. Clammer dep. at 15; Leonard dep. at 65; Flues dep. at 92–93.

15. Clammer dep. at 25–26; Flues dep. at 92.

16. Clammer dep. at 28; Leonard dep. at 65; Flues dep. at 92.

17. Clammer dep. at 22, 30.

18. Clammer dep. at 34, 37; Leonard dep. at 73; Flues dep. at 98–99, 107–108.

19. Clammer dep. at 33–34; Flues dep. at 95–104; Leonard dep. at 72.

20. Clammer dep. at 23–25; Flues dep. at 95–98.

21. Clammer dep. at 45–46; Flues dep. at 110–115.

22. Battistone dep. at 41–42.

would not sign any contracts" without appellants' approval.[23]

Appellants admitted that they prepared no written documents or instruments and performed no actual services in connection with rezoning and sewage problems,[24] although counsel in oral argument contended that appellants had studied these problems even though they had not yet contacted any officials. Flues testified that before finding a buyer these services would be premature.[25] Flues' time sheet was produced, showing the time he devoted to conferences, telephone calls, and inspection of property.

Lingo collected a commission of $50,000 on the sale of the property. It was recognized by all parties prior to the consummation of the sale that appellants claimed compensation for their services, and Lingo executed an agreement to indemnify the seller and purchaser from all claims for commissions and fees made "by Messrs. Clammer and Flues, or any person or persons claiming under or through them."

It is undisputed, as appellee argues, that the named plaintiffs were not admitted to practice law in Maryland. It does appear, however, from Clammer's deposition that "an associate" of the firm was admitted to practice in Maryland, and it is recited in the brief in the district court that the "customary listing of plaintiffs shows that they had associated with them for representation in Maryland matters, Daniel H. Crowley, who is licensed to practice law in Maryland." Crowley participated in this litigation as an attorney for the plaintiffs.

■ It is clear from an examination of all of the depositions in their entirety that there were genuine issues of material facts as to the representation of appellee by appellants, the nature of the agreement between them, and the services actually performed by appellants.[26] It is obvious from appellants' own testimony, however, that the strictly legal services to be performed under the "retainer" were limited in scope, and those actually performed were meager and would not in themselves justify a substantial recovery.

Accepting appellants' own testimony, it is apparent that their primary function under their "retainer" was to find a purchaser for the property—the function of a real estate broker, and that any legal services were somewhat incidental. Whether appellants will be able to show that they were the "procuring cause" of the sale,[27] as they contend, is yet to be determined, but, as noted *supra*, no surmisal as to the result of the trial is a sufficient basis for refusing a party his day in court. We conclude that there is sufficient evidence in the depositions to raise an issue of fact as to whether appellants were the procuring cause of the sale.

Appellee contends that even though the factual issues and services performed should be resolved in appellants' favor, they are still precluded from maintaining this action for "non-legal" services since they are not licensed real estate brokers in either the District of Columbia or State of Maryland.

■■ Licensing of real estate brokers is required by D.C.Code Title 45,

23. Flues dep. at 112.

24. Clammer dep. at 44; Leonard dep. at 68, 81–82; Flues dep. at 122–123.

25. Flues dep. at 94.

26. We agree with appellee that in view of the depositions appellants may "not rest upon the mere allegations and denials" of their pleadings to support their contention that there are genuine issues of fact. Rule 56(e) F.R.Civ.P. as amended in

1963. Here, however, the testimony of appellants in their depositions fully support the allegations of their complaint.

27. A real estate broker "must establish, however, that he is the primary, proximate and procuring cause, and it is not enough that he may have planted the seed from which the harvest was reaped." Leimbach v. Nicholson, 219 Md. 440, 149 A.2d 411 (1959).

§ 1401, and licensing is a prerequisite for maintaining an action for services under § 1407. Section 1402, however, provides that these provisions "shall not apply to * * * attorneys at law in the ordinary practice of their profession * * *."

Article 56, Section 212, Maryland Code, reads:

"[§] Exceptions.—The terms 'real estate broker' and 'real estate salesman" shall not include:

\* \* \* \* \*

"6. Attorneys at law who are not regularly engaged in the real estate business and who do not hold themselves out by sign, advertisement or otherwise as offering to the general public the services authorized by this subtitle to be performed by real estate brokers; * * *"

Appellee argues that Maryland law is controlling and that this exception is inapplicable because the three named plaintiffs are not licensed to practice law in the State of Maryland. Appellee relies on an opinion of the Attorney General of Maryland that the provisions of Section 212 apply only to attorneys licensed to practice in Maryland.[28] As noted *supra,* however, there is evidence that one of the associates of appellants' firm is licensed to practice in Maryland. Moreover, apparently all conferences among the parties were held in the District of Columbia, although the property was located in Maryland and appellants went there to show the property. We think the District of Columbia Law, the exception under § 1402, governs.[29]

The resolution of the legal issues relative to the applicable law and appellants' claim for compensation for non-legal services under the exceptions in the real estate brokers' licensing statutes depends largely upon the findings of the court or jury on the factual issues. Accordingly we deem it premature to rule now upon these legal issues.[30]

Whatever the ultimate merits of appellants' case, we conclude that the testimony in their depositions raised issues of material facts. Viewing the conflicting evidence in the light most favorable to appellants we cannot say that appellee is entitled to prevail as a matter of law.

Reversed.

28. In 47 Md.Att.Gen.Opinions, 168 (1962), it is stated:

"(The question is) whether the term 'attorneys at law' (in Art. 56 § 212(f)(6)) is limited to attorneys licensed to practice law in the State of Maryland.

"Attorneys who are licensed to practice law in this State are subject to supervision by both the courts and the bar associations of the State. This is nonetheless true where they are engaged in the purchase and sale of real estate for their clients. However, there would be no local control over attorneys admitted to practice only in other jurisdictions."

29. In re Parkwood, 149 U.S.App.D.C. 67, 103–104, 461 F.2d 158, 194–195 (1972).

30. Moreover, if the court or jury should find, as appellee contends, that BHJK dealt with appellants as prospective purchasers and did not retain them as attorneys, there would be no right of recovery. If it should be found that appellants were retained as attorneys but were not the "procuring cause" of the sale, there would be no right of recovery, except a lesser amount for purely legal services actually performed.

Further, we express no opinion as to the propriety of practicing lawyers engaging in the real estate brokerage business, but note that Informal Decision No. C 709—8/2/64, American Bar Association Standing Committee on Professional Ethics, Informal Opinions, found the real estate brokerage business so closely related to the practice of law as to constitute the practice of law when engaged in by an attorney, and that an attorney with a Maryland real estate broker's license doing both legal and brokerage work for a client could ethically charge only a legal fee, and not a broker's fee. See also Informal Decision No. 775—2/15/65, ABA Standing Committee on Professional Ethics, Informal Opinions.