Stanley SIEGEL, Appellant,

v.

Juanita M. KREPS, Individually and as
Secretary of the United States De-
partment of Commerce, et al.

No. 77–1549.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 18, 1979.

Decided April 13, 1981.

**774**

Christopher Fager, Washington, D. C., with whom Laurence Singer, Washington, D. C., was on the brief for appellant.

Norman M. Monhait, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Peter E. George, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before ROBINSON and MacKINNON, Circuit Judges, and HAROLD GREENE *, United States District Judge for the District of Columbia.

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. 29 U.S.C. § 633a(c) (1970).

Opinion for the Court filed by District Judge HAROLD H. GREENE.

Opinion concurring in part and dissenting in part filed by Circuit Judge SPOTTS-WOOD W. ROBINSON, III.

HAROLD H. GREENE, District Judge.

This is an appeal from the dismissal of an action brought by a federal employee alleging age discrimination, religious discrimination, and retaliatory discharge. Although the administrative history of this case is somewhat involved, the law is clear.

On December 24, 1975, appellant Stanley H. Siegel, an employee of the United States Bureau of the Census, instituted this action against the Secretary of Commerce, the Director of the Bureau of the Census, and the United States, alleging employment discrimination and wrongful discharge. The first count of the complaint alleged nonselection for training programs, allegedly on account of religion and age in violation of the Age Discrimination in Employment Act of 1967,[1] Title VII of the Civil Rights Act of 1964,[2] and the First Amendment to the Constitution. The second count alleged that appellant's then pending discharge from federal employment was due to his religion and age and in retaliation for an age discrimination complaint which he had previously filed, in violation of the Age Discrimination in Employment Act, the Administrative Procedure Act,[3] and the First and Fifth Amendments.

After limited discovery, appellees filed a motion to dismiss the Title VII claims on various grounds. These included the contention that with respect to some of his claims appellant had not filed a formal administrative complaint; that with respect to others he had not complied with requisite time limits for filing or provided notice of his intent to sue; and that still another

2. 42 U.S.C. § 2000e–16 (Supp. II 1972).

3. 5 U.S.C. §§ 701–706 (1970).

claim arose prior to the effective date of the relevant statute.[4]

The District Court, treating the motion to dismiss as a motion for partial summary judgment (F.R.Civ.P. 54(b)), dismissed the complaint with respect to the alleged denial of training due to appellant's religion and the allegations that appellant's discharge was retaliatory and discriminatory.[5] This appeal followed.

I

Appellant, who is of the Jewish faith, began employment with the Department of Commerce, Bureau of the Census, in December, 1968, as an electronics technician in grade GS–5. On September 24, 1970, he filed an administrative equal employment opportunity complaint alleging that he had been discriminatorily denied promotion and training opportunities because of his religion. Final agency action on his complaint, by the issuance of a Board of Appeals and Review decision upholding an earlier finding of no discrimination, occurred on August 10, 1971. Appellant instituted no other administrative proceedings alleging religious discrimination at any time thereafter.

In the Spring of 1974, appellant discussed with one Leverne Brugger of the Complaints Section of the Civil Service Commission his complaint that he was still being denied training opportunities on religious grounds. Brugger took him to see Paul Cerwonka, a supervisory appeals examiner for the Civil Service Commission Board of Appeals and Review.

The events of the meeting between appellant and Cerwonka are the subject of some dispute. According to appellant, he told Cerwonka that he wished to file a complaint based upon religious discrimination. In response, Cerwonka allegedly informed him that he had exhausted his administrative remedies with respect to religious discrimination in 1971; that a complaint was now foreclosed; and that he was limited to a complaint based on alleged age discrimination. Cerwonka, on the other hand, stated both by way of an affidavit and in oral testimony at the hearing on the motion that he does not remember conferring with appellant; that his responsibility at the time was to consider the review of agency decisions in discrimination cases rather than to deal with new complaints; and that his practice was to refer a person who wished to initiate a complaint to that person's agency or to the Office of Federal Equal Employment Opportunity for proper counselling in that regard. Cerwonka conceded that he might have advised appellant that his remedies with respect to his 1970 complaint had been exhausted, but he claimed to be certain that he would not have told appellant that a complaint based on recent religious discrimination was unavailable to him.

Shortly thereafter, on April 22, 1974, appellant filed an administrative complaint alleging that he was being denied training opportunities because of his age, but on July 1, 1975, he was informed that the complaint was rejected for lack of evidence. Appellant appealed that decision to the Civil Service Commission, and while that appeal was pending,[6] he filed the civil action which is before us on appeal.

Also during the pendency of the administrative proceedings involving the alleged

---

4. Claims arising under the Equal Employment Opportunity Act of 1972 (42 U.S.C. § 2000e–16 (Supp. II 1972)) occurring prior to the effective date of that statute may be considered only if they were the subject of a formal administrative complaint pending on that date. *Sperling v. United States*, 515 F.2d 465, 473–74 (3d Cir. 1975).

5. The only remaining claim, based on the alleged denial of training because of age discrimination, was dismissed by mutual agreement of the parties, with the approval of the court. The court also dismissed the complaint insofar

as it claimed jurisdiction under provisions other than Title VII of the Civil Rights Act and the Age Discrimination in Employment Act, and insofar as *Rogers Morton* and *Vincent P. Barabba* were being sued in their individual capacities. Appellant did not oppose these grounds for dismissal and they are not part of this appeal.

6. Final action on the age discrimination complaint was a finding by the Commission of no discrimination rendered on February 17, 1976.

denial of training opportunities, appellant met several times with his supervisors to discuss his training problem. Appellant had previously been warned that should he repeat acts of misconduct in which he had engaged from time to time in the past[7] he might be removed from the federal service. During one of the meetings with his supervisors he apparently again engaged in offensive and abusive conduct, and on November 21, 1974, he was informed by the Bureau of the Census that his federal employment would be terminated.

An appeal from the removal action was taken to the Federal Employee Appeals Authority of the Civil Service Commission. That appeal was limited to two claims—that the removal was flawed by procedural defects and that the action constituted retaliation for his previous complaints against the agency. The Appeals Authority denied the appeal in a final decision dated October 14, 1975, which rejected his contentions and substantively found that he had engaged in various acts of misconduct.

Although the complaint in the court below raised several other issues (see note 5, supra), the only questions remaining here relate to appellant's claim of religious discrimination with respect to the denial of training opportunities, and his claims that his discharge was the product of retaliation and of religious and age discrimination.

## II

Title VII of the Civil Rights Act of 1964 requires the exhaustion of certain administrative remedies as a prerequisite to a court action to remedy alleged racial, sexual, or religious discrimination. The principal exhaustion requirement is that the complainant must initially seek relief in the agency which has allegedly discriminated against him. *Brown v. General Services Administration*, 425 U.S. 820, 831, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976).

Appellant failed to pursue any of the administrative remedies available to him with respect to the claim that in 1974 he was denied training because of religious discrimination. After the agency denied relief on his 1970 religious discrimination complaint he filed no further complaints with anyone alleging religious discrimination in connection with training denials, whether during that year[8] or at any time thereafter. Indeed, that issue was raised for the first time in this civil action. Thus, on the basis of the plain words of the statute[9] and under the regulations,[10] the action in the court below was subject to dismissal.

7. The records show that in 1969, appellant was suspended for insubordination and for being absent without leave. In 1970, he had sought to meet with the Chairman of the Civil Service Commission, and when told that this was not possible, he characterized his supervisors as "louse," "bum," and "liar," and threatened to kill one of them. In November, 1971, he was suspended for being absent without leave; in December 1971, he threatened bodily harm to a supervisor; in June, 1973 he was suspended for "unwarranted vilification" of an official and an attempt to bribe an official to induce him to fire appellant's supervisors; and in January, 1974, he called an official of the Civil Service Commission to complain of a "conspiracy" in his department, and in the course of their conversation he again threatened to harm his supervisors.

8. The judicial remedy provided by 42 U.S.C. § 2000e–16 is retroactively available only to those complaints whose administrative complaints were pending as of March 24, 1972, the date the amendments to Title VII of the Civil Rights Act of 1964 became effective. See *Sperling v. United States, supra* note 4. Appellant filed administrative complaints alleging religious discrimination on September 24, 1970, and the CSC Board of Appeals and Review took final agency action thereon on August 10, 1971. As of March 24, 1972, the effective date of 42 U.S.C. § 2000e–16, appellant had no administrative complaint alleging religious discrimination pending. Accordingly, appellant's right to bring a civil action with respect to religious discrimination was not retroactively available based upon his 1970 administrative complaint.

9. "Within thirty days of receipt of notice for final action taken by a department ... or after one hundred and eighty days from the filing of the initial charge with the department ... an employee ... if aggrieved by the final disposition of his complaint ... may file a civil action ..." 42 U.S.C. § 2000e–16(c).

10. 5 C.F.R. §§ 713.214(a)(1), 713.281 (1978).

Appellant claims that he was given erroneous advice by Cerwonka, and that but for that advice he would have filed a timely complaint with the agency. At a minimum, it is claimed, there is a disputed issue of fact on the Cerwonka issue and consequently on the question of whether his untimely filing should be excused on account of equitable considerations. There are several flaws in that argument.

Exhaustion of administrative remedies has generally been regarded as a prerequisite to the maintenance of a federal employee's Title VII discrimination suit, and absent special circumstances, failure to exhaust calls for a dismissal of the action. *League of United Latin American Citizens v. Hampton*, 163 U.S.App.D.C. 283, 501 F.2d 843 (1974); *Jordan v. United States*, 522 F.2d 1128, 1132 (8th Cir. 1975); *Spencer v. Schlesinger*, 374 F.Supp. 840, 843–844 (D.D.C.1974). Appellant relies on such decisions as *Coles v. Penny*, 174 U.S.App.D.C. 277, 531 F.2d 609 (D.C.Cir.1976); *Bell v. Brown*, 181 U.S.App.D.C. 226, 557 F.2d 849 (1977); and *Laffey v. Northwest Airlines, Inc.*, 185 U.S.App.D.C. 322, 567 F.2d 429 (1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978), to support his contention that his failure to exhaust does not compel dismissal. However, these cases involved only the question whether the time limitations [11] of the statute and the regulations may be waived on account of equitable considerations. Appellant's lawsuit is defective not because he failed to file on a timely basis but because he failed to exhaust or even to begin his administrative remedies.[12]

The contention that a timely administrative complaint was not filed due to advice from Cerwonka does not help appellant. The District Court considered affidavits and testimony on the issue of advice given to appellant by Cerwonka, and implicit in its dismissal of the claim are findings that appellant was not improperly advised by Cerwonka, or that, if he was given erroneous advice, he was not justified in relying thereon. On the record before us, that conclusion was correct.

Civil Service and departmental regulations direct employees to initiate complaints with a designated agency equal employment opportunity counsellor. 5 C.F.R. 713.213 (1978); D.C.A.O. 202–713 § 213. At the time of his meeting with appellant, Cerwonka was not an EEO counselor but a supervisory appeals examiner with the Civil Service Commission, concerned with the review of discrimination complaints on appeal rather than the institution of new complaints. It may be that appellant can be charged with constructive knowledge of these departmental regulations which are published and available to the general public upon request, and he may certainly be regarded as having knowledge of these regulations on a more concrete basis.

When appellant filed his first discrimination complaint with the agency in 1970, he followed the correct procedure, and thereafter he was involved in several administrative proceedings regarding his status in the federal service. Appellant was thus generally familiar with the process. Under no circumstances can the exhaustion and timely filing requirements be accurately described with respect to this appellant as doctrines which "may prove to be insurmountable stumbling blocks to the aggrieved federal employee who is, quite understandably, inexperienced and unknowing with respect to the mechanics of a discrimination action." [13] In short, special equitable considerations which might cause us to consider whether the general barrier could be

---

11. A civil action may be filed only within thirty days of notice of final Civil Service Commission action, or after inaction by either the agency or the Commission for one hundred eighty days from the filing of the original discharge or the taking of an appeal. 42 U.S.C. § 2000e–16(b), (c), *Hackley v. Roudebush*, 171 U.S.App. D.C. 376, 520 F.2d 108, 126 (1975); Department of Commerce Administrative Order (D.C.A.O.) 202–713 §§ 212 et seq.; 5 C.F.R. 713.281 (1978).

12. For a discussion of the distinction, see *Coles v. Penny, supra*, 174 U.S.App. at 281–82, 531 F.2d at 613–614.

13. Appellant's Brief, p. 10.

waived are conspicuously absent in this case.

■ We conclude that the District Court was correct in its determination that there was no genuine issue of material fact on the issue of whether appellant was improperly advised by Cerwonka to his detriment.[14]

### III

■ Appellant's claims regarding his discharge from employment likewise lack merit.

As noted, appellant asserted in the District Court and he asserts here that his discharge was the product of religious and age discrimination and that it constituted retaliation for his previous discrimination complaints. However, the only claims he raised in the administrative proceedings following his discharge were that improper procedures had been employed[15] and that the discharge constituted a retaliatory act. No mention was made at any stage of those proceedings of either religious or age discrimination. These issues are therefore foreclosed on exhaustion of administrative remedies grounds. *Brown v. General Services Administration, supra; Bunch v. United States*, 548 F.2d 336, 340 (9th Cir. 1977); *Meisch v. U. S. Army*, 435 F.Supp. 341 (E.D.Mo.1977), *aff'd.*, 566 F.2d 1178 (8th Cir. 1977).[16]

■ Appellant did not pursue the appropriate remedies with respect to his retaliation claim. He filed an appeal of his removal action with the Federal Employee Appeals Authority pursuant to 5 U.S.C. §§ 7501 and 7512 and 5 C.F.R. § 752.201–203. The Appeals Authority considered this appeal and rejected it, stating that his removal did not constitute a retaliatory action and that it was substantively justified. Upon review of that decision under the Administrative Procedure Act, the courts are limited to deciding whether there is evidence of substance in the administrative record which supports the agency's view of the matter. *Goldwasser v. Brown*, 135 U.S. App.D.C. 222, 228 n.4, 417 F.2d 1169, 1175 n.4 (1969), *cert. denied*, 397 U.S. 922, 90 S.Ct. 918, 25 L.Ed.2d 103 (1970).

Although the District Court did not make a specific finding on this issue, the record and the decision of the Federal Employee Appeals Authority were before it on the summary judgment motion. The court's conclusion that there was no genuine issue of material fact on this issue and that defendants were entitled to judgment as a matter of law may appropriately be regarded as a determination that there was substantial evidence to support the agency finding. Our review of the record convinces us that this determination by the court below was not clearly erroneous and that the court correctly applied the law in determining that defendants were entitled to judgment.

For the reasons stated, the judgment of the District Court is

*Affirmed.*

---

14. Even if appellant had established a justifiable reliance on Cerwonka's alleged erroneous advice, he would, at most, be entitled to a waiver of the time limits for the initiation of a complaint with the administrative agency rather than to the right to institute a civil action. Congress intended that administrative agencies should have an opportunity to consider a federal employee's discrimination claim, because such a process promotes dispute resolution through accommodation rather than through litigation. *Weise v. Syracuse University*, 522 F.2d 397, 412 (2d Cir. 1975). While waiver of the time limits for initiating an administrative discrimination complaint through the administrative process pursuant to 5 C.F.R. § 713.-214(a)(4) might have been available to the appellant, he never requested such a waiver. Accordingly, we need not decide whether such a waiver, had it been requested, should have been granted.

15. The procedural defects claim was not made in the District Court action and it is likewise not before us.

16. Under the Age Discrimination in Employment Act, 29 U.S.C. § 633a(d), a civil action is precluded unless the individual first files an age discrimination complaint with the Civil Service Commission or notifies the Commission of his intention to file a civil action within one hundred eighty days after the unlawful practice occurred. Appellant did neither.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge, concurring in part and dissenting in part:

Appellant charges the Bureau of the Census with a variety of discriminatory conduct. In 1974, he says, the Bureau barred his participation in training sessions because of his religion,[1] in violation of Title VII of the Civil Rights Act of 1964,[2] as extended to the federal workforce by the Equal Employment Opportunity Act of 1972.[3] In 1975, he continues, the Bureau discharged him because of his age as well as his religion, and in retaliation for an administrative complaint asserting denial of on-the-job training on account of his age.[4] Thus, additionally to Title VII, appellant implicates the Age Discrimination in Employment Act of 1967,[5] as broadened by coverage of federal personnel through the Fair Labor Standards Amendments of 1974.[6] The District Court awarded appellees summary judgment on each of these claims.[7]

I concur in affirmance of the ruling on training opportunities, but for reasons different from those expressed · by my colleagues.[8] I join, too, in affirmance of the ruling on discharge to the extent that religion and attained age are alleged as causes.[9] I cannot, however, accept either the rationale or the result today ascribed to the claim of retaliatory discharge, and to that extent I respectfully dissent.[10]

I

In December, 1968, appellant was employed by the Bureau as an electronics technician.[11] Almost from the beginning his six-year career there was stormy, but in many respects beyond the purview of this litigation.[12] In September, 1970, appellant complained to the Bureau of religious discrimination in admission to training sessions,[13] but that effort terminated unsuccessfully eleven months later when the agency's finding of no discrimination was

---

1. Appellant's Complaint (Complaint) ¶¶ 4–6, Joint Appendix (J.App.) Document (Doc.) B at 2.

2. Pub.L.No.88–352, tit. VII, §§ 701 *et seq.*, 78 Stat. 253 (1964), as amended, 42 U.S.C. §§ 2000e *et seq.* (1976) [hereinafter cited as codified].

3. Pub.L.No.92–261, §§ 2 *et seq.*, 86 Stat. 103 (1972), codified, as amended, variously at 42 U.S.C. §§ 2000e *et seq.* (1976) [hereinafter cited as codified]. This is not the first time appellant has asserted such a claim; he did so administratively in 1970–71, but lost. See text *infra* at notes 13–14.

4. Complaint ¶¶ 17–21, J.App.Doc. B at 5–6. See also note 7 *infra*.

5. Pub.L.No.90–202, 81 Stat. 602 (1967), as amended, 29 U.S.C. §§ 621 *et seq.* (1976) [hereinafter cited as codified]. In the District Court, appellant asserted that the refusal of training opportunities also contravened the First Amendment, and that the discharge transgressed both the First and Fifth. Complaint ¶¶ 1, 6, 10, 12, 17, 21–22, J.App.Doc. B at 1–6. He does not, however, urge constitutional grounds on appeal.

6. Pub.L.No.93–259, § 28(b)(2), 88 Stat. 74 (1974), 29 U.S.C. § 633a (1976), since amended (Supp. III 1979) [hereinafter cited as codified].

7. *Siegel v. Morton*, Civ. No. 75–2152 (D.D.C. Mar. 16, 1977) (order), J.App.Doc. L. The judgment also rejected appellant's additional contention that his discharge was procedurally and substantively deficient, Complaint ¶ 22, J.App.Doc. B at 6, but left open a charge, Complaint ¶¶ 5–9, J.App.Doc. B at 2–3, that appellant was denied training because of his age. J.App.Doc. L. The first claim is not pressed on appeal, and the second was dismissed by consent of the parties with the court's approval, J.App.Doc. M, and consequently is not before us.

8. Discussed in Part I *infra*.

9. Discussed in Part II *infra*.

10. Discussed in Part II *infra*.

11. Complaint ¶ 2, J.App.Doc. B at 1.

12. Appellant's troubles are summarized by the Federal Employee Appeals Authority of the Civil Service Commission, *Appeal of Stanley Siegel* (Oct. 14, 1975) at 1–3, J.App.Doc. A at 1–3, and by my brethren, Majority Opinion (Maj. Op.) at note 7.

13. Affidavit of Robert P. Stephens ¶ 3, J.App. Doc. E Exhibit (Ex.) A at 2.

sustained on administrative appeal.[14] Difficulties of other sorts persisted,[15] and ultimately the events precipitating this lawsuit came to pass.

In early 1974, suspecting ongoing religious prejudice,[16] appellant conferred with Paul Cerwonka, a supervisory appeals examiner for the Civil Service Commission.[17] In June of that year appellant followed with a second complaint to the Bureau, this time claiming age discrimination only.[18] Appellant states that he did not raise anew any question of religious bias because Cerwonka told him that his 1970–71 venture had exhausted all available administrative recourse on that score.[19] Appellees, disavowing that claim,[20] call attention to administrative regulations demanding consultation with an agency-designated equal employment opportunity counselor—a step appellant never took [21]—as a condition precedent to a formal administrative complaint of Title VII violations.[22] My brethren hold that appellant either knew of his requirement from his earlier battles with the Bureau or was legally chargeable with "constructive knowledge" of them.[23] I travel another route, though I arrive at the same destination.

When appellant held his ill-fated conversation with Cerwonka, regulations of the Civil Service Commission [24] called upon fed-

14. *Id.* Predating the extension of Title VII benefits to federal employees, see notes 2–3 and related text, and unaccompanied by any claim of continuing discrimination, see *Shehadeh v. Chesapeake & P. Tel. Co.*, 193 U.S.App.D.C. 326, 339, 595 F.2d 711, 724 (1978); *Laffey v. Northwest Airlines, Inc.*, 185 U.S.App.D.C. 322, 366, 567 F.2d 429, 473 (1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Macklin v. Spector Freight Sys., Inc.*, 156 U.S. App.D.C. 69, 77–78, 478 F.2d 979, 987–988 (1973), this episode has no current role. *Grubbs v. Butz*, 169 U.S.App.D.C. 82, 84, 514 F.2d 1323, 1327 (1975); *Womack v. Lynn*, 164 U.S.App.D.C. 198, 504 F.2d 267 (1974).

15. See *Appeal of Stanley Siegel, supra* note 12, at 1–3, J.App.Doc. A at 1–3; Maj. Op. at note 7.

16. Affidavit of Stanley H. Siegel ¶ 2, J.App.Doc. H at 1.

17. *Id.* ¶¶ 4–9, J.App.Doc. H at 1–2. See also Affidavit of Paul Cerwonka ¶¶ 3–8, J.App.Doc. J at 1–2.

18. Affidavit of Robert P. Stephens ¶ 4, J.App. Doc. E Ex. A at 2.

19. Affidavit of Stanley H. Siegel ¶¶ 6–11, J.App.Doc. H at 2; Brief for Appellant at 6–7, 21–22.

20. In the District Court, as here, appellees contradicted appellant's account of his conversation with Cerwonka. See Affidavit of Paul Cerwonka ¶¶ 6–8, J.App.Doc. J at 2; Brief for Appellees at 5–6. My colleagues deem implicit in the court's grant of summary judgment for appellees "the finding that appellant was not improperly advised by Cerwonka, or that, if he was given erroneous advice, he was not justified in relying thereon." Maj. Op., text following note 12. I am unable to agree. There is no room for factfinding on a motion for summary judgment; indeed, such a judgment is improper when any material fact remains genuinely in dispute. Fed.R.Civ.P. 56(c); *Bloomgarden v. Coyer*, 156 U.S.App.D.C. 109, 114–115, 479 F.2d 201, 206–207 (1973); *Leonard v. BHJK Corp.*, 152 U.S.App.D.C. 97, 99, 469 F.2d 108, 110 (1972). Nor is summary judgment to be awarded merely because the court believes that a litigant's version of events is unlikely to prove true in the event of trial. *Harl v. Acacia Mut. Life Ins. Co.*, 115 U.S.App.D.C. 166, 168–169, 317 F.2d 577, 579–580 (1963). However, even with the details of the meeting with Cerwonka in dispute, I think summary judgment was appropriate because what transpired at that meeting is not material to the legal issue upon which this aspect of the appeal turns. See text *infra* at notes 24–30, 38–39.

21. Affidavit of Robert P. Stephens ¶ 5, J.App. Doc. E Ex. A at 2.

22. Brief for Appellees at 11. See text *infra* at notes 24–30. Appellees argue that, as a further consequence of nonobservance of the regulations, appellant was not justified in relying on Cerwonka's advice. Brief for Appellees at 14–15.

23. Maj. Op., text following note 12.

24. When Congress brought the bulk of the federal workforce within Title VII's ambit by the Equal Employment Opportunity Act of 1972, Pub.L.No.92–261, 86 Stat. 103 (1972), it gave the Civil Service Commission rulemaking and enforcement authority in the federal sector and directed subject agencies to comply with pertinent Commission regulations. See 42 U.S.C. § 2000e–16(b) (1976). Pursuant to the Reorganization Act of 1977, Pub.L.No.95–17, 5 U.S.C. §§ 901–912 (Supp. III 1979), those functions were transferred to the Equal Employment Opportunity Commission, effective October 1,

eral executive agencies subject to Title VII [25] to designate equal employment opportunity counselors,[26] and to publicize to employees information identifying the counselors and advising of their availability to advise any employee believing that he had been subjected to discrimination of a type prohibited by Title VII.[27] Those regulations also summoned the agencies to require any aggrieved employee to consult with a counselor before presenting a discrimination complaint administratively,[28] and to inform employees of the need to do so.[29] Among the evident objectives of the consultation was an opportunity for exploration of the employee's problem with a view to a solution on an informal basis.[30]

The record discloses that before appellant embarked upon his 1974 quest for relief, the Department of Commerce ordered consultation with an equal employment opportunity counselor as a precondition to a formal administrative complaint.[31] The record is silent, however, on just what if anything was done to communicate the existence and content of this order to employees, as the Civil Service Commission had mandated.[32] My colleagues attempt to bridge this gap by suggesting that perhaps "constructive knowledge" can be imputed to appellant, and by ruling that in any event he had actual knowledge.[33] I cannot subscribe to an automatic "constructive knowledge" attribution to employees of information of a rule which the agency is directed by higher regulatory authority to publicize suitably for their edification.[34] Nor can I understand how appellant could actually have gained actual knowledge of the consultation requirement from past experience in his other bouts with the Bureau, which either antedated establishment of the requirement or stemmed from personnel actions completely beyond its ken.[35]

I join in affirmance on this branch of the appeal simply because appellant has not met a burden that plainly was his. There is a well-settled legal presumption that public servants duly perform their official duties [36]

1979. Reorganization Plan No. 1 of 1978, § 3(a), 43 Fed.Reg. 19807 (1978), *reprinted in* 5 U.S.C. app. at 354 (Supp. III 1979). See also Exec. Order No. 12106, 44 Fed.Reg. 1053 (1978). The regulations cited *infra* notes 26–30 were adopted by the Civil Service Commission, 37 Fed.Reg. 22717 (1972), 37 Fed.Reg. 25699 (1972), were redesignated and continued in effect by the Equal Employment Opportunity Commission, 43 Fed.Reg. 60900 (1978), and are hereinafter cited as currently codified.

**25.** See *Lawrence v. Staats*, 640 F.2d 427 (D.C. Cir.1981).

**26.** 29 C.F.R. § 1613.204(c) (1979).

**27.** *Id.* § 1613.204(f)(3).

**28.** *Id.* §§ 1613.213(a), 1613.214(a)(1)(i).

**29.** *Id.* § 1613.204(f)(3).

**30.** *Id.* § 1613.213(a).

**31.** This was accomplished by amendment in 1971 of a departmental order originally issued in 1969, Ad. Order No. 202–713 § 713.213(1).

**32.** See text *supra* at notes 26–30.

**33.** Maj. Op., text following note 12.

**34.** See text *supra* at notes 26–30. I speak, of course, of the Department of Commerce's consultation order, and not to the Civil Service Commission's regulations, for publication of the latter in the Federal Register was "sufficient to give notice of [their] contents . . . to a person subject to or affected by [them]." 44 U.S.C. § 1507 (1976). The regulations, however, were not self-executing; rather, they expressly called for action by the agencies individually, and for affirmative steps to acquaint employees with that action. See text *supra* at notes 24–30.

**35.** Appellant's complaint alleging religious discrimination in the denial of training opportunities was filed on September 24, 1970. Affidavit of Robert P. Stephens ¶ 3, J.App.Doc. E Ex. A at 2. The Department of Commerce did not prescribe consultation until April 19, 1971. Appellee's Appendix (A. App.) C at 24. None of the other personnel problems appellant subsequently encountered gave rise to any administrative complaint charging Title VII discrimination. See *Appeal of Stanley Siegel, supra* note 12, J.App.Doc. A at 2–4; Affidavit of Robert P. Stephens ¶¶ 4–5, J.App.Doc. E Ex. A at 2.

**36.** *Lewis v. United States*, 279 U.S. 63, 73, 49 S.Ct. 257, 260, 73 L.Ed. 615, 619 (1929); *United States v. Royer*, 268 U.S. 394, 397–398, 45 S.Ct. 519, 520, 69 L.Ed. 1011, 1013–1014 (1925); *Nofire v. United States*, 164 U.S. 657, 660–661, 17 S.Ct. 212, 213, 41 L.Ed. 588, 589–590 (1897); *Koch v. United States*, 150 F.2d 762, 763 (4th

—meaning, of course, that he who asserts the contrary has the onus of demonstrating it.[37] Appellant does not suggest that the Department of Commerce was derelict in its obligation to inform its employees of the availability and function of equal employment opportunity counselors, and of the necessity of consulting with them before proffering a formal discrimination complaint. Surely we cannot proceed on mere conjecture that the Department did not discharge its responsibility to publicize the precomplaint consultation procedure.

Indubitably, appellant did not utilize that procedure, and the justification he now advances—misadvice by Cerwonka—is unpalatable.[38] It follows that, for failure to pursue this course toward possible informal agency-level adjustment of the charge of religious deprivation of training opportunities, appellant is foreclosed from litigating that claim in the courts.[39] I thus agree that the District Court's summary judgment on that much of the case was in order. I do not agree that it is appropriate, under the aegis of "constructive knowledge," to interpose an unnecessary impediment to employ-

ee-complainants who might in the future seek to raise a meritorious issue as to whether an agency did in fact publicize its mechanism for counseling employees on their prerogatives under Title VII.

## II

In his complaint in the District Court, appellant also launched a three-pronged attack on his ultimate discharge by the Bureau in early 1975. The dismissal, he said, was attributable both to his religion and to his age, and was a reprisal for his 1974 administrative complaint alleging denial of training because of his age.[40] The District Court's summary judgment rejected each of these contentions,[41] and this court now affirms that disposition in toto.[42] Since appellant did not seek administrative consideration of the first two facets of his discharge protest—discrimination because of religion and attained age—he effectively barred himself from urging them in his suit. Appellant's charge of retaliatory discharge, however, does not invite condemnation of that sort, and in my view should be heard in the District Court.[43]

---

Cir. 1945); *United States v. Fratrick*, 140 F.2d 5, 7 (7th Cir. 1944); *Kozak v. United States*, 458 F.2d 39, 40–41 (Ct.Cl.1972). This presumption extends to the substantive validity as well as the procedural regularity of administrative action. *Maryland-National Capital Park & Planning Comm'n v. Lynn*, 168 U.S.App.D.C. 407, 412, 514 F.2d 829, 834 (1975); *Udall v. Washington, V. & M. Coach Co.*, 130 U.S.App. D.C. 171, 175, 398 F.2d 765, 769 (1968), *cert. denied*, 393 U.S. 1017, 89 S.Ct. 622, 21 L.Ed.2d 561 (1969); *Duesing v. Udall*, 121 U.S.App.D.C. 370, 374, 350 F.2d 748, 752 (1965), *cert. denied*, 383 U.S. 912, 86 S.Ct. 888, 15 L.Ed.2d 667 (1966).

37. See cases cited *supra* note 36.

38. To accept appellant's claim in that regard is *to license federal employees to choose other federal employees of their own liking as advisors on Title VII matters, and to bind agencies to the consequences thereof.* Government could hardly thrive under such a regime, and administration of Title VII likely would be hampered. Be that as it may, no valid objection to agency designation of qualified personnel as equal employment opportunity counselors has been registered, and certainly none is apparent.

39. *Brown v. General Serv. Admin.*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402,

411 (1976); *President v. Vance*, 200 U.S.App. D.C. 300, 307, 627 F.2d 353, 360 (1980); *League of United Latin Am. Citizens v. Hampton*, 163 U.S.App.D.C. 283, 285–287, 501 F.2d 843, 845–847 (1974). Compare 42 U.S.C. § 2000e–16(c) (1976).

40. See text *supra* at notes 4–6. In 1974 appellant, born July 22, 1922, Complaint ¶ 2, J.App. Doc. B at 1, was qualified by age to invoke the Age Discrimination in Employment Act. See 29 U.S.C. §§ 631, 633a (1976 & Supp. II 1978). His complaint in the District Court, however, was broader than his administrative appeal from his discharge, which did not embrace the first two grounds. A.App. A at 1–2.

41. *Siegel v. Morton, supra* note 7, J.App.Doc. L.

42. Maj. Op. pt. III.

43. The parties have proceeded on the common ground that a discharge in retaliation for a complaint of age discrimination is itself discrimination on the basis of age. The Act puts that beyond peradventure for the private sector. 29 U.S.C. § 623(d) (1976). While the provision doing so is not extended statutorily to federal employment, *id.* § 633a(f) (Supp. III

After the Bureau terminated appellant, he went to the Federal Employee Appeals Authority of the Civil Service Commission.[44] There, represented by counsel,[45] he protested his firing on several grounds, but none suggested in the least that the discharge was induced by his religious faith or his attained age.[46] Exhaustion of administrative remedies is as much a normal prerequisite to suits alleging age discrimination[47] as it is to those invoking Title VII.[48] Even assuming that appellant was not obliged to press his claim of age-based discharge at either the departmental or the appellate level,[49] he would still be barred by his failure to comply with a statutory requirement that he give notice of his intent to institute suit on that claim.[50]

Standing on an entirely different footing, however, is appellant's charge that the Bureau dismissed him in retaliation for his 1974 age discrimination complaint.[51] That was the opening allegation inaugurating his appeal to the Appeals Authority,[52] and one that his counsel voiced at the hearing.[53] Accordingly, there is general agreement that appellant thus exhausted his administrative remedy respecting the reprisal charge, and was free to litigate that charge in this suit.[54] My colleagues, however, point out that the Appeals Authority found that appellant's removal was a justified

1979), it seems clear that analytically a reprisal for an age discrimination charge is an action in which age bias is a substantial factor. Compare *Barnes v. Costle*, 183 U.S.App.D.C. 90, 96–98, 561 F.2d 983, 989–991 (1977). See also *Sperling v. United States*, 515 F.2d 465, 484 (3d Cir. 1975), *cert. denied*, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976).

44. See *Appeal of Stanley Siegel, supra* note 12, J.App.Doc. A; A.App. A.

45. See *Appeal of Stanley Siegel, supra* note 12, J.App.Doc. A at 1; A.App. A, B.

46. See *Appeal of Stanley Siegel, supra* note 12, J.App.Doc. A; A.App. A. For present purposes, I distinguish a personnel action taken solely because an employee has reached a given age from one taken as a reprisal for something done by the employee in the past. See text *infra* at notes 52–55.

47. *Bunch v. State*, 548 F.2d 336, 340 (9th Cir. 1977); *Trammell v. Callaway*, 415 F.Supp. 212, 216–217 (N.D.Miss.1976). See also *Hinton v. Soloman*, 475 F.Supp. 105, 108–109 (D.D.C. 1979).

48. See text *supra* at notes 38–39.

49. Appellant brushes this possibility aside with the bare comment that as a discharged employee he had no such duty. Reply Brief for Appellant at 3. I do not address this contention, for in any event another omission by appellant is fatal to its consideration here. See note 50 *infra* and related text.

50. "When the [complaining] individual has not filed a complaint concerning age discrimination with the [Civil Service] Commission, no civil action may be commenced by any individual under this section until the individual has given the Commission not less than thirty days' notice of an intent to file such action. Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred." 29 U.S.C. § 633a(d) (1976). While appellant did in 1974 present a complaint of age-based discrimination in *job training* to the Commission, at no time did he bring before the Commission his charge that the same kind of bias prompted his 1975 *discharge*, nor did he ever notify the Commission that he planned to institute suit on the latter theory. Affidavit of Jeanne M. Monk, J.App.Doc. F Ex. D; Affidavit of Larry K. Goodwin, J.App.Doc. F Ex. E at 2.

51. That complaint was filed June 19, 1974. Affidavit of Robert P. Stephens ¶ 4, J.App.Doc. E Ex. A at 2. On November 11, 1974, the Appeals Review Board of the Civil Service Commission remanded it to the Bureau for further processing. *Appeal of Stanley Siegel, supra* note 12, at 7, J.App.Doc. A at 7. On February 17, 1976, the agency made a finding of no discrimination. Affidavit of Robert P. Stephens ¶ 4, J.App.Doc. E Ex. A at 2. Meanwhile, on October 24, 1974, the Bureau instituted the removal action. *Appeal of Stanley Siegel, supra* note 12, at 7, J.App.Doc. A at 7.

52. "The removal is in retaliation for Siegel's appeal to the Civil Service in an age discrimination case. Siegel was successful and the Commissions [*sic*] decision generated this removal action." A.App. A at 1.

53. "As alleged in the answer and in the appeal letter, Mr. Siegel feels this action is in retaliation for his pursuit of an appeal to the U.S. Civil Service Commission [employment discrimination], and Mr. Siegel feels that only after the successful remanding by the Commission did this retaliatory action take on full steam." Hearing Transcript 157–158.

54. See Maj. Op., text following note 16; Post-Argument Memorandum for Appellees at 7–8.

personnel action rather than a retaliatory step,[55] and proceed to hold that all he was due was a review of the administrative record to ascertain whether that finding was buttressed by substantial evidence.[56] Concluding that it was, they affirm the District Court's dismissal of the retaliatory-discharge claim without further ado.[57]

I cannot subscribe to this disposition. If that claim is within the ambit of the Age Discrimination in Employment Act—and I think it is [58]—the question is whether appellant, like a litigant under Title VII,[59] is entitled to have it tried de novo.[60] This court already has proceeded on the premise that employees suing the Federal Government for alleged violations of the Act have the right to a trial.[61] At least two other courts, for reasons I find appealing, are fully in accord with that view,[62] and I would abide it here. So, while concurring in affirmance on all other aspects of the summary judgment under review, I would remand the case to the District Court for appropriate proceedings on the charge of retaliatory discharge.[63]

55. Maj. Op., text following note 16. See *Appeal of Stanley Siegel, supra* note 12, J.App. Doc. A at 7.

56. Maj. Op., text following note 16. The explanation there given is that appellant's effort in the District Court called for consideration of the Appeals Authority's decision under the review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* (1976). I believe appellant's suit was an original action authorized by the Age Discrimination in Employment Act, 29 U.S.C. § 633a(c) (1976), and as such is governed by different principles. See text *infra* at notes 58–62 and note 43 *supra.*

57. Maj. Op., text following note 16.

58. See note 43 *supra.*

59. *E.g., Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976); *Hackley v. Roudebush,* 171 U.S.App.D.C. 376, 520 F.2d 108 (1975).

60. In the District Court, appellant insisted upon a trial de novo on this claim. Complaint ¶ 20, J.App.Doc. B at 8.

61. *Nakshian v. Claytor,* 202 U.S.App.D.C. 59, 628 F.2d 59, *cert. granted sub nom. Hidalgo v. Nakshian,* 449 U.S. 1009, 101 S.Ct. 563, 66 L.Ed.2d 467 (1980). Indeed, in *Nakshian* the court concluded that such employees have the

right to a jury trial on factual issues arising from demands for relief traditionally deemed legal rather than equitable in nature—the precise holding to be reviewed by the Supreme Court. Compare *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) (employees in the private sector entitled to a jury trial in suits under the Act). The Act now expressly gives private-sector employees the right to a jury trial of factual issues in actions seeking monetary recovery for violations, whether or not equitable relief is sought. 29 U.S.C. § 626(c)(2) (Supp. II 1978).

62. *Nabors v. United States,* 568 F.2d 657, 658–660 (9th Cir. 1978); *Hall v. United States,* 436 F.Supp. 505, 507–509 (D.Minn.1977). These are apparently the only two decisions squarely addressing the question of entitlement to a trial de novo.

63. Appellees, conceding that this claim is cognizable under the Act, and that appellant's action in the District Court is to this extent available to him, argue that "appellant's complaint is simply too vague to raise it adequately," and resultantly that he must seek that court's leave to amend. Post-Argument Memorandum for Appellees at 7–8. I would leave that contention to the District Court in the first instance. See Fed.R.Civ.P. 15(a), (c).