Ronald **WALLACE**, Plaintiff,

v.

William J. **HENDERSON**, Postmaster General, et al., Defendants.

No. C–3–00–61.

United States District Court, S.D. Ohio, Western Division.

Dec. 7, 2000.

---

Patrick J. Conboy, Kettering, OH, for Plaintiff.

Patrick Quinn, Terry L. Lewis, Dayton, OH, Michael A. Marrocco, Kettering, OH, for Defendant.

## DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S MOTION TO DISMISS, PURSUANT TO FED. R. CIV. P. 12(B)(6) (DOC. # 18)

RICE, Chief Judge.

This litigation arises out of the alleged harassment of Plaintiff Ronald Wallace by Defendants Trellis Grubbs ("Grubbs"), the Plant Manager for the Dayton Processing and Distribution Center of the United States Postal Service and Plaintiff's supervisor, and Larry Fugate ("Fugate"), the Manager of Distribution and Operations of that Center, in retaliation for Plaintiff's cooperation as a witness in two sexual harassment investigations. According to his Complaint, Plaintiff began employment with the United States Postal Service in January of 1989 at the Dayton Processing and Distribution Center. In May, 1989, he was promoted to a supervisory position. In the Spring of 1996, Plaintiff witnessed Fugate and Grubbs sexually harass two female employees. These women subsequently filed sexual harassment complaints. In June, 1996, Plaintiff assisted investigators in their investigations of the sexual harassment complaints. As part of his participation, he gave a statement concerning the employees' claims. Thereafter, Grubbs and Fugate subjected Plaintiff to constant harassment, including threats to his life, threats to his employment, threats of serious injury to him, harassing language and gestures, and stalking. Plaintiff repeated complained to the Postal Service Inspector and to other supervisors about Grubbs and Fugate's conduct, but his complaints were ignored. Plaintiff alleges that the threats and harassment were in retaliation for his cooperation in

the investigations of the sexual harassment complaints.

In response to Fugate and Grubbs' conduct, Plaintiff initiated this litigation on January 28, 2000 (Doc. # 1), against them, as well as William J. Henderson, the Postmaster General.[1] He set forth two claims for relief, to wit: 1) a claim of retaliation, in violation of 42 U.S.C. § 2000e ("Title VII")[2] and Ohio law,[3] and 2) a state law claim for intentional infliction of emotional distress. In "Count Three," Plaintiff alleges that Grubbs and Fugate acted in a gross, wanton, and malicious manner, entitling him to punitive damages.

Pending before the Court is Grubbs' Motion to Dismiss, pursuant to Fed. R.Civ.P. 12(b)(6) (Doc. # 18). Defendant argues that Plaintiff cannot state a claim for retaliation, because Title VII and Ohio law do not provide for individual liability. He further contends that Plaintiff cannot state a claim for intentional infliction of emotional distress, arguing that § 2000e is the exclusive remedy for Plaintiff's claims. As a means of analysis, the Court will first set forth the standard governing Defendant's Motion, and then will address each argument in turn. For the reasons assigned, Defendant Grubbs' Motion to Dismiss is SUSTAINED in PART and OVERRULED in PART.

## I. *Standard Governing Rule 12(b)(6) Motions to Dismiss*

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir.)(citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993)), *cert. denied*, 519 U.S. 1008, 117 S.Ct. 510, 136 L.Ed.2d 400 (1996); *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Barrett v. Harrington*, 130 F.3d 246 (6th Cir.1997), *cert. denied*, 523 U.S. 1075, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998)("In considering a motion to dismiss for failure to state a claim, the Court is required to take as true all factual allegations in the complaint."); *Lamb v. Phillip Morris, Inc.*, 915 F.2d 1024, 1025 (6th Cir.1990), *cert. denied*, 498 U.S. 1086, 111 S.Ct. 961, 112 L.Ed.2d 1048 (1991). However, the Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements. The Court is to dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## II. *Individual Liability*

 Defendant maintains that he cannot be held individually liable under either

---

**1.** On November 8, 2000, the Court sustained Plaintiff's motion for a default judgment against Fugate (Doc. # 28). It indicated that damages, if any, would be assessed at the conclusion of the liability phase of this litigation.

**2.** Based on Plaintiff's allegations, the Court assumes that Count One is brought under § 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16.

**3.** Although Plaintiff alleges generally that he has brought a claim for retaliation under Ohio law, his Opposition Memorandum (Doc. # 19) argues that Grubbs may be held individually liable under Ohio Rev.Code § 4112.02. No other cause of action under Ohio law is mentioned. Accordingly, the Court now construes Count One as setting forth claims for retaliation, pursuant to Title VII and Ohio Rev.Code § 4112.02, only.

Title VII or Ohio law. He argues that Title VII imposes liability only upon employers, and he is not an employer within the meaning of that statute. Grubbs further argues that the Supreme Court of Ohio has stated that federal case law interpreting Title VII is generally applicable to case involving violations of Ohio Rev.Code § 4112.02. Based thereon, he argues, Ohio courts and courts within this district have dismissed claims under Ohio Rev.Code Ch. 4112 against individual defendants, on the ground that there is no individual liability under that Chapter. Plaintiff has not disputed Defendant's assertion that there is no individual liability under Title VII. Because the Court agrees with the parties that Title VII does not provide for individual liability, *Wathen v. General Electric Co.*, 115 F.3d 400 (6th Cir.1997)(rejecting individual liability under Title VII), Plaintiff's claim against Grubbs for retaliation, in violation of Title VII (portion of Count One), is DISMISSED. Plaintiff argues, however, that a supervisor may be held individually liable under Ohio Rev.Code § 4112.02. The Court agrees.

In *Genaro v. Central Transport, Inc.*, 84 Ohio St.3d 293, 703 N.E.2d 782 (1999), the Ohio Supreme Court distinguished the statutory definitions for the term "employer" contained within Title VII, 42 U.S.C. § 2000e(b), and Ohio Rev.Code § 4112.01(A)(2). It noted that Title VII's definition of employer is "far less reaching than the encompassing language of R.C. 4112.01(A)(2)." 84 Ohio St.3d at 299, 703 N.E.2d at 787. The Court concluded that supervisors and managers can be held personally liable for unlawful discriminatory acts committed by such persons, in violation of Ohio Rev.Code Chapter 4112. Accordingly, Defendant's Motion to Dismiss Plaintiff's state law retaliation claim against him (Portion of Count One), on the ground that he cannot be held individually

liable under Chapter 4112, is OVERRULED.

## III. *Exclusivity of Title VII*

■ Defendant argues that Plaintiff's claim for intentional infliction of emotional distress must be dismissed, because Title VII provides an exclusive remedy for discrimination against federal employees. In *Brown v. General Serv. Admin.*, 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the Supreme Court held that Title VII provides " 'an exclusive judicial remedy for claims of discrimination in federal employment.' " *Id.* at 835, 96 S.Ct. 1961. The *Brown* Court, therefore, dismissed the plaintiff's § 1981 claim, concluding that Congress intended to create "an exclusive, preemptive administrative and judicial scheme for redress of federal employment discrimination." *Id.* at 828–29, 96 S.Ct. 1961. Following *Brown*, the Sixth Circuit has repeatedly dismissed discrimination claims brought under other discrimination statutes. *E.g., Forest v. United States Postal Serv.*, 97 F.3d 137, 141 (6th Cir. 1996); *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984)("[A] federal employee claiming job discrimination may proceed only under Title VII, and may not secure additional remedies by proceeding also under § 1981."). Recently, in *Davis v. Runyon*, 1998 WL 96558 (6th Cir. Feb.23, 1998), the Sixth Circuit dismissed claims by a postal employee against the Postmaster General, which were brought under 42 U.S.C. § 1981 and the Ohio Rev.Code Chapter 4112, on the ground that those claims attempted to remedy discrimination in the workplace, and Title VII provides the exclusive judicial remedy for such conduct. Thus, pursuant to Supreme Court and Sixth Circuit authority, Plaintiff may not pursue a claim for discrimination in the federal workplace, other than one under Title VII. Accordingly, even though Ohio

Rev.Code Chapter 4112 provides for individual liability, Plaintiff cannot proceed with his discrimination/retaliation claim under that statute, due to the exclusivity of Title VII. Although Defendant has not specifically argued that Plaintiff's state law retaliation claim must be dismissed due to Title VII's exclusivity, the Court concludes that said claim, brought pursuant to Ohio Rev.Code § 4112.02, must be DISMISSED, on that ground that Title VII provides Plaintiff's sole remedy for retaliation in the workplace.

■ Plaintiff's claim for intentional infliction of emotional distress presents a more difficult question. In interpreting *Brown*, a number of courts have distinguished between discrimination claims and other claims which, although arising out of the same facts and circumstances, seek to remedy injuries other than workplace discrimination. As succinctly summarized by the United States District Court for the District of Colorado in *Brunetti v. Rubin*, 999 F.Supp. 1408 (D.Col.1998):

> Since *Brown*, several courts have determined that § 717 does not subsume or preempt all claims that rely on the same nucleus of operative facts. In *Stewart v. Thomas*, 538 F.Supp. 891, 893 (D.D.C.1982), a federal employee alleged that she was the target of verbal and physical sexual harassment. Specifically, the federal employee alleged that her supervisor had made periodic sexual advances toward her, which included touching her body in a sexual manner, attempting to kiss her, and verbally pressuring her to engage in sexual relations. She further alleged that he retaliated against her after she refused to submit to his sexual demands. The federal employee sued under Title VII and under common law theories of assault, battery, and intentional infliction of emotional distress. *Id.*

The defendants moved to dismiss the intentional infliction of emotional distress claim on the ground that Title VII provides the exclusive remedy for all claims arising from the set of alleged facts. *Stewart* held that "Brown does not prohibit federal employees who allege employment discrimination from suing on any cause of action arising from the same facts." *Stewart* dismissed the federal employee's claim of intentional infliction of emotional distress to the extent the federal employee's emotional injuries resulted from the stressful work situation created by the defendant's discrimination. But to the extent that her emotional injuries were a direct result of her supervisor's assaultive behavior, *Stewart* held that the federal employee could maintain her claim. Thus, *Stewart* stands for the proposition that a federal employee who has brought a Title VII claim is not precluded from suing for "a highly personal violation" that goes beyond discrimination.

> \*　　\*　　\*　　\*　　\*　　\*

> ... Nothing in [the] history [of § 717] suggests that Congress intended to prevent federal employees from suing their employers or supervisors for constitutional, statutory, or common law violations against which Title VII provides no protection at all. Here, plaintiff bases her Title VII claim against the IRS and her tort claim against Medeiros on two distinct and independent rights: the right to be free from discriminatory treatment at one's work site and the right to be free from bodily or emotional injury caused intentionally by another person. Accordingly, I hold that plaintiff may simultaneously seek redress for violations of each distinct and independent right.

999 F.Supp. at 1411–12; *see also Brock v. United States*, 64 F.3d 1421, 1423 (9th

Cir.1995)("Title VII is not the exclusive remedy for federal employees who suffer 'highly personal' wrongs, such as defamation, harassing phone calls, and physical abuse ... When the harms suffered involve something more than discrimination, the victim can bring a separate claim."); *Ethnic Employees of the Library of Congress v. Boorstin,* 751 F.2d 1405, 1414–16 (D.C.Cir.1985) (allowing federal employees to sue their employers "for constitutional violations against which Title VII provides no protection at all"); *Owens v. United States,* 822 F.2d 408 (3d Cir.1987)(plaintiff's state law claims not dismissed, subject to a ruling on defendant's immunity).

Not all courts, however, accept this view. Most notably, in *Pfau v. Reed,* 125 F.3d 927 (5th Cir.1997), the Fifth Circuit dismissed state law claims against a supervisor, on the ground that Title VII precluded all other claims, including state law claims for intentional infliction of emotional distress, against both the federal government and supervisors. The *Pfau* court explicitly rejected the contention that non-Title VII claims which arise from the same facts and circumstances as the Title VII claim could avoid preclusion. It stated: "So long as the factual predicate of a claimant's non-Title VII claim is the same as the factual predicate for the claimant's Title VII claims against a federal agency, we are bound to conclude that Title VII preempts the non-Title VII claims." 125 F.3d at 933–34, n. 2 (rejecting *Brock*); *see also Ray v. Reich,* 1994 WL 148105 *1 (D.C.Cir. Apr. 13, 1994) ("Further, as Title VII provides the exclusive remedy for federal employees asserting discrimination claims, Ray's claims for intentional infliction of emotional distress and breach of the covenant of good faith and fair dealing were properly dismissed."); *Holloway v.*

*Bentsen,* 870 F.Supp. 898, 900–02 (N.D.Ind.1994) (citing *Hampton v. Internal Revenue Serv.,* 913 F.2d 180, 183 (5th Cir.1990)).

The Sixth Circuit, while not explicitly addressing this issue, recently cited to *Pfau* in addressing whether a plaintiff's claims under Ohio Rev.Code Chapter 4112 and § 1981 were preempted, noting the Fifth Circuit's conclusion that Title VII precluded a state law claim for intentional infliction of emotional distress against a federal employer for actions occurring in the workplace. *Davis,* 1998 WL 96558 at *5. However, the *Davis* court gave no indication whether it would approve of the Fifth Circuit's standard that *any* claim which arises out of the same facts and circumstances as the Title VII claim is preempted by Title VII.

This Court has identified only two district court cases within the Sixth Circuit which have touched upon this issue. In *Quillen v. United States Postal Service,* 564 F.Supp. 314 (E.D.Mich.1983), the district court refused to dismiss the plaintiff's assault and battery claim, "because it is not a cause of action for employment discrimination within the scope of section 717 of Title VII." *Id.* at 321. In *Mallekoote v. Marsh,* 1991 WL 502985 (W.D.Mich. Sept. 27, 1991), another district court within this circuit dismissed the plaintiff's claims against her individual supervisor for intentional infliction of emotional distress and for discrimination, pursuant to Michigan's anti-discrimination statute.[4] The Court recognized, citing *Quillen,* that some courts have allowed certain state law tort claims on the ground that they are not causes of action for employment discrimination within the scope of Title VII. However, the court directly addressed a different issue, name-

---

4. The plaintiff had sued the Secretary of the Army and her supervisor for sexual harass-

ment and intentional infliction of emotional distress.

ly whether Title VII precludes "a parallel tort suit against the federal official in his independent capacity for matters covered by Title VII." 1991 WL 502985 at *4.

Upon review of the case law and Title VII's legislative history, this Court concludes that the view espoused by *Brunetti* and similar courts is the most persuasive. While the Supreme Court has expressed that Title VII provides the exclusive judicial remedy for discrimination in the federal workplace, the Court has found no indication that it intended to preclude plaintiffs from bringing claims which, although based on the same facts and circumstances as the Title VII claim, are based on a violation of a distinct and independent right. *See* H. Rep. 92–238, 1972 U.S.C.C.A.N. at 2137, 1257–60. To hold that such claims are precluded by Title VII would deprive plaintiffs of a remedy for injuries which are not addressed by that statute. Accordingly, to the extent that Plaintiff's intentional infliction of emotional distress claim is the result of retaliation in his workplace, that state law claim must be DISMISSED, as precluded by Title VII. However, to the extent that his intentional infliction of emotional distress claim seeks redress for a "highly personal injury," beyond discrimination or retaliation, which was caused by Grubb's behavior, his claim remains.[5] In his Complaint, Plaintiff alleges that Grubbs and Fugate engaged in a variety of harassing conduct, including death threats, threats of serious injury,

threats to his employment, and stalking. He further alleges that, as a result of this conduct, his heart condition worsened, and he became afraid to leave his apartment. Plaintiff's allegations allege emotional distress that resulted not just from having to endure retaliation in the workplace, but from Grubbs and Fugate's particular threats and conduct. Accordingly, the Court concludes that Plaintiff has alleged a "highly personal injury," beyond retaliation, which is not preempted by Title VII.

For the foregoing reasons, Defendant Grubbs' Motion to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), is SUSTAINED in PART and OVERRULED in PART. Plaintiff's retaliation claim against Grubbs, pursuant to both Title VII and Ohio Rev.Code. § 4112.02, is DISMISSED. Because Plaintiff cannot maintain his retaliation claim under Ohio Rev. Code § 4112.02, as a matter of law, due to Title VII's exclusivity, that claim must also be DISMISSED with respect to the Postal Service. However, Plaintiff's Title VII retaliation claim against the Postal Service REMAINS in this litigation. Plaintiff's state law intentional infliction of emotional distress claim is DISMISSED, as to Grubbs and the Postal Service, to the extent that it is based upon emotional distress resulting from retaliation in the workplace. Plaintiff's state law intentional infliction of emotional distress claim REMAINS, against those Defendants, to

---

**5.** Plaintiff has argued that his intentional infliction of emotional distress claim is not preempted, because Grubbs acted outside of the scope of his employment. Whether Grubbs acted within the scope of his employment has no bearing on whether Plaintiff's state law claim against that Defendant is precluded by Title VII. Defendant's argument addresses the breadth of Title VII's exclusivity. To the extent that Plaintiff's state law claim is not preempted, the scope of employ-

ment issue becomes relevant with regard to whether Grubbs is immune from liability, pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679 (the "Westfall Act"), which "shields federal employees from liability for common law torts committed within the scope of employment." *Henson v. National Aeronautics and Space Admin.,* 14 F.3d 1143, 1147 (6th Cir.1994).

the extent that it is based on Plaintiff's "highly personal injury," resulting from specific threats and conduct.